And will you call the next case please? 314-0034 Taxpayers and 101 E. Crossroads, et al. Founds by Evan Karnes. School District Numbers 33C, 92, 205, 70C, 157C, and 210 have leased by John Izzo. Mr. Karnes. Good afternoon. It's been an entertaining afternoon so far. Well, we hope it continues. I'll try not to disappoint you guys. Justice, we're here on behalf of multiple taxpayers and multiple entities to argue against the trial court's error in granting a style of motion to vacate which was later adopted as a 5-214-01 petition for relief. Before we get moving into that, I need to advise the panel that prior to today, over the period of the last several months as we've awaited hearing, one large taxpayer known as PDVMR has settled a series of global issues with two of the districts. And as a result of that series, those two districts, 205 and 92, about $1,100,000 is off the table of these arguments because we're dismissing those claims as to PDVMR and they've agreed to dismiss all kinds of other claims related to it, PTAB, assessment appeals, et cetera, for a period of a number of years. So that's not a part of this anymore? It's going to be withdrawn from this and the effect of it is if you were to look at, for instance, your blue brief, on page 6, line 2, Will County, District 92, goes down from $782,943 at issue to $29,243 at issue. And line 3, Blackport Township, District 205, goes down from $393,336 at issue to $43,340 at issue. Should I repeat those numbers? I talk fast. Yeah, you want to say that again? Sure. Just the line thing. Line 3, line 2, District 92, drops from the number that's there to $29,243.11. $243? $243.11. What brief are we on? Blue. Page 6. Blue page 6. Yes, please. Blue page 6, line 3, drops to $43,340.33. Is that in the brief or you're saying you're making that up? I'm advising the panel that this settlement has been negotiated and is in the process of being signed as we're here. And what would really be nice is when you get this done, is this going to happen soon? Well, I wasn't involved in the negotiations. Other counselors were. My understanding is everybody signed off. But could you file something with us to commemorate that? You know what I'm saying? You want an answer or just yes will work? Just yes. Yes, we can. Okay. That will make it cleaner. We've got it. This is off the table. Right. Okay. So the net effect of that is this brings it down to the total at issue here. That total on the bottom right changes down to $875,840.58. With me today, panel, and on brief is John Adam Powers. I'll be making the argument. The text does appear here because trial court erred in that it failed to consider that it had no subject matter jurisdiction in this case when it entertained what became an argument over a 2-1401 petition. By the time the 21401 petition had been filed in either late September or October of 2013, the state's attorney for Will County in my office had negotiated a compromise settlement agreement, had presented it to the court. The court had entered it in May. The collector for Will County, the statutorily designated nominal defendant and the agent for payment of all the individual taxing districts, had issued payment to my office as required by the agreed order. We had begun to distribute money. The point of the matter is that by the time that this was even brought to the attention of the court, regardless of whether 2-1401 due diligence occurred, there was no justiciable controversy because there was a voluntary payment made to pay a voluntary compromise. You know, in this case, the state's attorney's office, they acknowledged they made a mistake, right? The state's attorney's office admitted that they checked certain records but not other records and that if they used other records, just like the equation in any math class when we were in school, if you change one of the components, the number is going to change. When? And they used the wrong formula. I don't believe the state's attorney's office said that, Justice. What they said is that the numbers that they checked that were on file with the clerk's office were different from numbers that the taxing districts later said should have been used and argued should have been used. I mean, they were using the wrong numbers, I guess. That's the taxing district's argument, yes. However, the taxing district did not raise in its 2-1401 that there was some mutual mistake effect nor did they support that argument in the 2-1401. In fact, the 2-1401 wasn't even filed as a 2-1401. It was filed as a motion to vacate. And the motion to vacate did not have a single affidavit, a single set of evidence attached to it that addressed anything other than the single issue that the district didn't receive notice from one or another of the county officers. That's all that the motion to vacate alleged. And on that basis, and on the basis that these numbers didn't make sense to them and there must be some other analysis, they should be vacated. The motion also did not seek to stay, didn't seek to freeze, didn't seek to impose a constructive trust. All it sought was intervention and to vacate. As such, we'll talk in a minute, but at the end of the day, the 2-1401 was not adequately supported as is required by the code. The effect of the voluntary payment negotiated by the individual with the sole statutory authority to negotiate the payment because the taxing districts by statute, by common law, this court and the Supreme Court and the other appellate courts do not have the authority, do not have the ability to enter a final settlement, and, in fact, do not have the ability to demand the matter be litigated. They have the authority solely under Madison 2 and the related cases to intervene and advise the state's attorney. In this case, the state's attorney didn't object to this. No, he did not. We both agreed that they could come in and file their motion for leave to intervene. That's what nobody objected to. He did object to the motion to vacate on various reasons, and it's a three- or four-page response that's in the record, Justice. In any event, the state's attorney's office, by statute and by common law, has both actual and apparent authority to enter these agreements. As such, the taxpayers had the full right to rely upon the authority and power of the state's attorney's office to negotiate at arm's length and resolve these agreements. Under the existing law, there was no coercion for this payment. It was a compromise agreement and, therefore, a voluntary payment to pay a compromise agreement. As I said a moment ago, when the motions to vacate, which were claimed later to be petitions under 214.01, were filed, there wasn't a single argument on those issues. The argument was lack of notice by a constitutional officer, either the clerk of the county, the clerk of the circuit court, or the state's attorney's office. No, I apologize. This settlement agreement is a contract, isn't it? Yes. We agreed to do this, I'll dismiss my objections, and you agreed to this, and you write it up. It's a contract. Yes, and we relied on that and began to disperse funds. So, where we are is intervenors, two sets of taxing districts that have intervened, have basically pled themselves out of any relief. Now, why do I say that? Well, if we look at the challenges to the state's attorney's settlement agreement, by common law decisions, challenges are limited to a review of whether or not the settlement or the decision was reached by bad faith, by fraud, or by inadequate representation. In the briefs at trial, and here, taxing districts admit that there was no bad faith. They conceded that they pled no bad faith. And, in fact, the trial court affirmatively found that there was no bad faith on anybody's part. In the motions before the trial court, in the briefs that were filed in response to our motion originally to strike, which we withdrew, just responded to what they later converted to a 214-01, there was no allegation of fraud by any party. No allegation, no facts, nothing to support fraud. And, in fact, in the briefs before this court, they conceded that they didn't plead fraud because fraud wasn't the issue. Two of the three elements that could have provided them some relief. So they relied not only on the possibility that inadequate representation gives them a right to seek relief under 214-01 before the trial court. However, they then plead to the trial court in their written documents and on oral representation that the sole basis of the inadequate representation is the lack of notice by other constitutional officers because the statute requires that the clerk of the county give the notice of the filing of a complaint. And the lack of notice by the state's attorney's office of the fact that there was to be a hearing on the submission of the compromise agreement was the inadequacy of representation. Compromise agreements don't require notice. By the laws of the state and the common law, a compromise agreement is merely the representation of the agreement to compromise a disputed matter. There's no hearing involved and it doesn't fall under the statute that requires notice. The fact that… Let me ask, suppose it did. Is the notice to the taxing bodies jurisdictional? In other words, if he failed to give notice and he was required to, would that deprive the trial court of jurisdiction to proceed with the settlement? There is nothing within the real estate tax property code that makes such notice jurisdictional. It does, however, provide for notice and a protocol for notice, but again it vests the state's attorney with the full authority to settle and the collector with the full authority to pay on behalf of the districts because they collect the taxes from the taxpayers and they pay them back if there is a settlement or a verdict. So the answer is no. So notice is more of an information act, right? That's the way the statute appears to be written, Justice. So the lack of notice boils down to this, which is, again, the last lynchpin in the… They've bled themselves out of the right to relief. Case law is clear that a petition to set aside one of these settlements cannot be based on the we can do better argument. One of the district counsel in argument made the attempt to distinguish the we can do better argument as it's not that we can do better, we think we can win. Well, if that's not better, I don't know how else you define better. This is purely and simply a we could have done better. We could have sharpened our pencil better. We could have looked at the numbers better. We could have run the computer calculator better and it's clear that that doesn't amount to inadequate representation under the case law. The issue here with respect to the meritorious defense, as I said a minute ago, the only thing the meritorious defense raised in the initial filing was the issue of notice. Therefore, as a matter of law, that's not a meritorious defense. Well, in the sense of the 214-01, a meritorious defense to a contract, I just have trouble connecting those dots. As did we, particularly when the party that negotiates the contract on behalf of the party that raises it is the statutorily required and designated lawyer to defend them. Although the Supreme Court of Illinois has said that detective bodies can intervene in these kinds of situations, the Madison case, correct? Madison too says exactly that, Justice Carter. But what Madison too says also is they preserve the right of the state's attorney to be the sole deciding factor and to make the decision about litigating, settling, et cetera. They get the right to intervene, but they don't get a right to control the litigation or make the final decision. But in this case, the state's attorney who handled the negotiations acknowledged that they were using wrong numbers. In retrospect, he acknowledged he did not look at all of the numbers available to him, yes. And so in that situation, isn't that inadequate representation when they're using faulty numbers and faulty details? I suggest, Justice Carter, that whether it is or it might not be is irrelevant here because it was never pleaded. There was no claim made in the 214-01 that the basis of the inadequate representation was the failure of the state's attorney to use correct numbers. The sole claim in the pleadings before the trial court was that there was a lack of notice. And that remains the sole claim in the pleadings before this court is that there was a lack of notice. Now, they've tried to dress it up in the reply to my response to their motion that became the 214-01. It was originally filed as a motion of vacate. And they've tried to bootstrap some new evidence in, but it wasn't in the 214-01. And as this court is fully aware, that's a very strict threshold to be met. Thank you, panel. I'm sorry I don't have the jokes that Mr. Coney brought, but perhaps next time. Mr. Izzo. Thank you, Your Honor. May it please the court? Counsel? My name is John Izzo, and I'm here arguing on behalf of the intervening school districts. I represent Will County School District 70C, that's Larraway, 150C, 157C, that's Frankfurt 210, that's Lincoln Way High School. My co-counsel present today, Jim Doherty from the Whitlaw firm. Their firm represents the other three school districts, Homer School District 33C, Lockport District 92, and Lockport Township High School District 205. We heard at the very beginning of my colleague's argument that there had been a settlement. To my knowledge, it's not finalized, but I understand that it's a tentative settlement. It doesn't change any of the facts here. It doesn't change any of the law here. In fact, it doesn't change any numbers as far as the three school districts that I represent. And that's a lot of money. It's not just for 2010. We've got a similar order that was entered in 2011 that we filed a motion to vacate that's hold pending this appeal. And there's more hundreds of thousands of dollars involved there. So it's very important. It has only to do with the total number of dollars at issue, not the districts involved, not the parties involved, and certainly not the facts or the law of the case. We're here because we're talking about whether the trial court, Judge Patrick Garland in Will County, promptly granted a Section 214.01 petition. And the focus on those requirements of that particular kind of petition has to be less than two years. It was. We had to raise a meritorious defense. We did. What meritorious defense did you raise? Our meritorious defense was that the plaintiffs, the objectors, had failed to state a prima facie cause of action under the Miller Standard, which is the Supreme Court case, and there's been 10 or 12 cases, appellate court cases following that, about how you allege a tax objection for excess accumulation. There's a particular formula to do that. And the first number, the first number that goes into that is the beginning year fund balance. And they got it wrong every time. Okay. Let me ask you this. I mean, do you agree that the Supreme Court has said in statute that the state's attorney is authorized to negotiate these cases? Yes, Your Honor. Now, so you've got a settlement, which is a continent. Now, let's suppose that it turns around, and the state's attorney was on his game, and the taxpayers came in with a lesser qualified attorney, and he buffaloed them into thinking, you all owe all this, when in fact they really didn't. But he said, but we'll waive, you drop your objection, we'll waive the interest and penalties. Okay, agreed. And then they go back and they go see lawyer B and said, holy cow, that didn't work so well for him. And so they say, in essence, gee, we made a bad deal. And we want the court to correct it because we got out, you know, our lawyer didn't use the right numbers, and it was to our detriment, so we want you to rewrite the contract. Would that work? Judge, what happened here, we never even got to the merits of this case. The Supreme Court said in the People x Rel. Divine v. Murphy case, that the circuit court in these kinds of cases has a duty to review a settlement from the state's attorney, and to review it for two things, fraud and for adequacy of counsel. We're doing that, and that's what we asked Judge Petringaro to do, and when she got it the second time and heard the assistant state's attorney stand up and say, I took the wrong number, she knew at that point that there had been inadequate representation of counsel because false numbers had been alleged and the wrong line of the wrong document had been looked at. So you made a bad deal. No, Judge, it was more than a bad deal. A bad deal is a judgmental thing about, I know these facts, I weigh what's stronger or weaker about my case. They made a mistake in every one of them, and a monumentally critical mistake, because it double counts the numbers. That's why there were so many excess accumulators. If a simple mistake will do this, then why the requirement for fraud or bad faith? Why do you have that in there? Hey, you made a mistake. Don't worry. We can do it again. Then why even have a requirement of fraud and bad faith if a mistake will do it? Judge, we as the school districts can't make the settlement. Only the state's attorney can make the settlement, but there's a check on that. It's an exchange. This is a unique area of the law where even though the school districts and all the taxing bodies have acknowledged under the Madison 2 case, have acknowledged different separate interests from the state's attorney, because tax objections can involve many different parties in many different taxing districts, that to control it, they have one lead, and the lead is the state's attorney, and only the state's attorney can make a settlement. However, there's a check on that, and the check is the fraud and the inadequate counsel standard. Does they have to have both? Let me ask you. No, only one, Judge. You didn't get notice, right? Everybody seems to agree you didn't get notice. Yes, we did not get notice. Statutory reporting, no. And for the same, so my question is, is notice jurisdiction, did notice deprive the trial court of jurisdiction to approve the settlement? Judge, no, but the lack of notice comes in in two very important ways. First of all, it puts a context for the state's attorney's mistake. If the state's attorney had given us notice and consulted with us, which this court in the Anderson case, which my opponent cites, that court, this court back in the 80s, said better practice is to consult with the affected officials. If he had done that, then his mistake, and excuse me, Judge, the second thing is the due diligence issue. Okay. Doesn't everybody that makes a bad contract make the same argument? Well, if I'd have known this, I wouldn't have done that. Absolutely not, Your Honor, because there was a mistake of fact. It was a clear mistake of fact. It wasn't a judgment call. There was an essential element of their prima facie case that was stated erroneously. They didn't state a prima facie case. You agree, not in bad faith and not in fraudulent faith. And so I'm just trying to figure out how this is any different from, gee, our agent, state's attorney, made a bad deal for us, and we want you to undo it. And it seems to me the basic tenet of the law is if you make a bad contract, shame on you, don't do it again. But the court won't rewrite it for you. If it had been the state's attorney itself in another case that was cited by the parties, I believe it was, again, the Anderson case, where it was one state's attorney who had cut the deal, then there was a subsequent election and a different state's attorney for the same office tried to renegotiate, and that was the problem there. Here we have different parties with different interests. So, again, what is the check on the absolute power of the state's attorney to bind? Is this issue about fraud or inadequacy of counsel? And how could it be more inadequate when he looked at the wrong number and didn't ask us? Well, as I said, if it looked at the wrong numbers and the other side looked at the wrong numbers to the detriment of the taxpayer, and the taxpayer came in and said, hey, we were all looking at the wrong numbers, and if we had known the right numbers, if we were looking at the right numbers, we wouldn't have agreed to this because we agreed to settle this case for far more than it was worth. And we wouldn't have done that if it had gone right. And was the taxpayer going to come in and do that? Judge, the difference there is it's the same party. Just like that same office, the state's attorney, I talked about here. Well, that's part of the question. Is the school district really a party? Didn't the Supreme Court say, okay, they can intervene and then come in and try to persuade the judge? But can they come in and try to vacate, undo what the state's attorney has done? Or does the state's attorney have to do that? Yes, Your Honor. We're a party in every which way except we can't settle it. That's the law. As to the meritorious defense 1401 aspect, your claim is that that was a showing when the wrong numbers were used. Yes. That was the showing of inadequate representation. That's correct, Your Honor. And if inadequate representation takes place, then that's a justification to do something else with regards to the settlement. Yes, Your Honor. I mean, you look at the totality of the facts, the facts that we didn't get a notice, the fact that we weren't consulted, the fact that the state's attorney admitted the conduct and he said, if I knew then and if I know now, I would never have used that number. That's what he said. He admitted the mistake. And on that issue, Judge Kim Cletton-Garrow, her job was to review the adequacy of counsel. She heard the state's attorney admit that mistake and made the determination that that had been inadequate counsel.  Yes, Your Honor. Okay. So you and I get in a car crash and you sue me. And you say, gee, it's a question of which one of us ran a red light. And I didn't run the red light. You did. I said, no, you did. You said, well, let's just settle this thing because you're hurt bad. So I pay you a bunch of money. And then three days later I find that I had, you know, that, gee, there's this video of you clearly running the red light. So I run in and I say, hey, wait, I've got a great defense to that case. And I want to set aside this settlement because had I known the right thing, that there was evidence out there that you ran the red light, I wouldn't have entered this settlement. Isn't it too bad? Judge Kim. Once you settle a case, whether you had a defense to the objections, the settlement is, you know, settlements always presume that one side's stronger than the other or something. And then you negotiate this thing. And that's what settlements are about. I understand that, Judge. But this isn't a matter of undisclosed evidence. This was a plain factual error that meant that. And we never heard from the other side that they picked the right number. Do you hear that? Do you notice that? Never in their briefs, never in the court below, never here this afternoon have you heard them say, yes, we used the right number. Because they used the wrong number, which meant that they did not even state a cause of action. It's not a matter of evidence. We didn't get to the merits because they didn't state the right cause of action. Well, let's take Justice Smith's example. I'm not talking about liability. Let's just say now the injured party says, yeah, I've got to get my medical paid. And I'm going to have to pay X, okay, because my medical for this injury is going to be X. And so I'll settle for X. Then two days later it finds out from the medical providers it's Y, three times as high as X. Can you overturn that then? You picked the wrong number. Judge, I don't know in other contexts about mutual mistake and when that would be a valid basis under Section 214.1. I'm sure there's a lot of cases under 214.1 that talk about that, okay? But we have a little bit different situation that doesn't even go that far. Okay. Because the Supreme Court has told us that the circuit court is supposed to review settlements by the state's attorney to look for inadequacy of representation. And we've told you why there was inadequacy of representation here. Because the state's attorney's office was incompetent, is that what you're saying? They handled this case incompetently. They handled this in the way that, you know, there were a lot of these cases. They were all settled across the board at 50 percent with a lot of money involved, never called the school districts. But that's a context. The fact is that was to aggravate the fact that he looked at the budget figure, and we haven't gone into this. I know it's added an item and discussed in the briefs and in the court below. But I think it's important to understand, when they use the figure from the budget that says, this is how much is available throughout the fiscal year, they're double-counting dollars. They're double-counting. That's why there were so many objections. And if you look at the petition, counsel said that we didn't allege this problem. The only problem we alleged was lack of notice. That couldn't be further from the truth. If you look in the petition, the vacate that I filed, I said I went through the Miller formula and came up with the ratios, using, making that assertion, supporting it by affidavit, and then in the replies, used the affidavits from all of the business managers and superintendents from the six school districts, explaining, yeah, this is where they got that number, and that double-counts. And in my initial petition, I went through and actually calculated the Miller ratios and showed that they were all well below 2.0. Have you cited any cases where 214.01 was used to attack a settlement? Judge, I'm not familiar with any. Neither. But I'm saying that the Supreme Court and the appellate court told us that it can be done. Where? Where did they say that? They said- 214.01 on a settlement. Judge, it was in this court in the Shanahan Park District that said, we're going to look at whether the settlement involved, I'm sorry, you were asked specifically, was it 214.01? And I'm not sure if the context there was 214.01 or whether it was an appeal. I guess, look, you're not going to agree with this because you've got clients to represent, and I understand that. But are we going to change basic tenets of contract and law because the government is in financial trouble? Because that seems where we're going these days. And I'm just wondering, do we still stick with basic principles of law, or do we bend them because, well, some government agencies or agencies or school districts are in trouble? That's not the issue here at all, Judge, because the formula that the legislature came up with that said, even though the school districts have the right to intervene, even though they have different interests, we're going to let the Attorney General, excuse me, the state's attorney control that litigation. But they put the limits on it, and those are the limits that were- and this is a classic example for it. I just want to leave you with this. Understand, these school districts did nothing wrong. They levied within their limits. And then years after- And the state's attorney negotiated it away. By looking at the wrong numbers. All they had to do was pick a number out of the air, stick it in there, and they had a state's attorney who said, okay, fine. And all of a sudden, Larraway School District with 400 kids is missing $600,000. Well, so is your beef with the taxpayer or with the state's attorney? Well, in this case, both, Your Honor. They alleged the wrong number, and the state's attorney went along with it. But no fraud or bad faith. Well, I can't show that. You didn't prove it. But the people, Exwell, Devine versus Murphy, said either or, didn't say both. But you haven't alleged either the wrong or bad faith, have you? No, we've alleged inadequate representation of counsel. That was the alternative. If somebody makes a bad deal, I'm sure their client is going to say, their lawyer leads them into a bad deal. They're probably not thinking that you had Clarence Darrow here doing it. Judge, if he had the right numbers and cut it at 50%, I would have said he made a bad deal. He had the wrong numbers. They were absolutely the wrong numbers. There was a plain factual error on a central element of their cause of action. That wasn't merely a bad deal. Okay. But is that enough to vacate it? Is that fraud? Assuming you're a premise, does that feed the bulldog? Does that get you over to being able to vacate the settlement because people were working with the wrong number? Obviously it does, Your Honor, because that's what Section 214.01 is all about. The legislature didn't have to put it there. They did. And they said, this is what you have to establish. Meritorious defense. We did. Due diligence. We didn't even know the case was going on. Due diligence in bringing it forward. We brought it forward within a few weeks. And we spelled all that out for the court. And then the states. I'm sorry. So now every time a tax appears, they settle these things with the state's attorney. Okay. And the trial judge approves it. And then the taxing bodies can come in and file a 214.01 and say, gee, they got it wrong and the trial judge got it wrong for approving it and let's have it a winner. And who wants to negotiate with the state's attorney anymore when every settlement he makes, and even though approved by a trial judge, could come back later and say, well, gee, there was a mistake here, and if they'd listened to us, we'd have got a better result. Judge, it wasn't merely a matter of a better result. They failed to state a central element, a misstated central element in the allegations. And it had no bearing to reality. So how can you imagine a more egregious situation if there's a standard of where the state's attorney is subject to review based upon inadequate representation? He took their number with whole cloth that had nothing to do with reality, and it cost the districts a lot of money. And they didn't do anything wrong. So doesn't Section 214.01, isn't it out there to produce justice under the terms? That's what Section 214.01 is all about. With regard to inadequate representation, because that's a separate stand-alone provision, is it not? Inadequate representation. Inadequate representation of the state's attorney is a stand-alone exception. An exception to the state's attorney's power to settle and bind the school districts. And so if the school district proves inadequate representation with these other things in 14.01, like due diligence, then you start over, right? Oh, yes, Judge. If we win this appeal, the case isn't we go back to ground zero and start all over with the right numbers. And the Supreme Court has said inadequate representation is sufficient. It did in the People x Rel Divide v. Murphy case, Your Honor, yes. And with regard to inadequate representation, the suggestion is that, is this fit into, well, we could have done a better deal, or is this fit into something else? It's qualitatively different, Judge. This isn't a matter of whether we could just get a better deal, because that's a judgment call. This was a factual error on a central element of their allegation. So it isn't just a matter of could we have gotten a better deal. That's a judgment call. So if fraud and bad faith are out of the picture, which they are out of the picture, then the inadequate representation here in this situation, from your theory, is based on a mutual mistake of fact with the wrong numbers. They can be characterized that way, yes, Your Honor, because there was a mistake alleged, central mistake, and the state's attorney said, how did I check this? I looked at this line in the budget, and it was the wrong line. That's a mistake. And that was acknowledged by the state's attorney who did this? At the hearing in front of Judge Petraeus, yes. By the way, the Murphy case, Divine Murphy, did it involve a settlement, and that involved the Chicago judges refusing to hand it in, to even sign approval of the settlement, right? The judge, yes. That had to do with the legislature changed the procedures for assessment cases, and part and parcel of that question was the role of the state's attorney, and the Supreme Court told us what the role of the state's attorney was, and the circuit court. I have already said that in this particular case, that if you hear there was never an argument that these weren't the wrong numbers, so I would just suggest here that what is Section 214.01 about? It's about the ends of justice, and if this isn't the case that fits that, for these school districts, what is? They did absolutely nothing wrong. You've never heard anything argument to the opposite. Many years after they spent this money, they find out, because they didn't get notice, that the wrong numbers were alleged, and the state's attorney looked at, did a cursory job of looking at the wrong number on the wrong form, and then said, yeah, I'll set all these at 50%, and after that they find out that they've lost hundreds of thousands of dollars. So I think that if you look at what Section 214.01 is all about, not only do we meet all the standards here, but this is a quintessential example of the type of case that that remedy was designed for. Well, let me just add one other thing. I've got people at Trail of Divine Care, and see if you think I'm reading this wrong. The state's attorney's compromise and settlement of a tax objection under Section 213.30 cannot be impeached on the grounds that the result could have been a veto for any other reason short of fraud or bad faith. Judge, if you're looking at the next paragraph with Head Note 13, however, the trial court must exercise its discretion in considering a settlement with respect to certain important issues. Specifically, the trial court must consider whether the settlement was negotiated by fraud or in bad faith, C. Anderson, and whether the state's attorney has adequately represented the public interest in reaching the settlement, C. Shanahan Park District. In exercising its discretion, the trial court may need to examine the terms of the settlement. However, the purpose of this examination will not be to judge the merits of the agreement, but rather to determine whether fraud or inadequate representation has occurred. That's what the Supreme Court's telling us. But they also said what I just said there, that you can't impeach the settlement short of fraud or bad faith. The state's attorney said it. That's what it said. Or inadequate representation. Well, that's not what it says either. So as in exercising the approval, that approval judge said look and see if they had adequate representation. The trial judge approved it, obviously thought they did. But then now to come back and impeach the settlement, it says you've got to show fraud or bad faith. Nothing short of fraud or bad faith. Judge, I respectfully disagree. I didn't write it. Your Honor, and I read the next paragraph, and I think if you look at the whole thing from the Supreme Court, they're telling us that inadequate representation is a basis for the trial court to reject a settlement. And that's what happened here. Okay. If there are no further questions? No. Okay. Mr. Carnes, on rebuttal. Briefly, Judge. Contrary to my good friend Mr. Rizzo's comments, at page 23 of the blue brief, you'll find that the school district stated that the settlement agreement was inadequate, quote, as a direct result of the lack of the statutorily required notice. Period. No argument that it was inadequate because he didn't look at the numbers. It was inadequate, allegedly, because he didn't provide some notice. Period. End of story. Shanahan Park District case is the opposite. In Shanahan Park District, there was no voluntary payment. We weren't dealing with an issue where money was already paid on an agreement and had begun to be distributed. We were dealing with a situation where within a short period past 30 days, they came in and wanted to review it. You know, if the trial level of that wasn't raised, was it the voluntary payment? It was. As a matter of fact, it was raised by the school districts who advised the court that one of their first notices was that they learned that the payment had been made in August, and I raised it with the court in my argument and said, Judge, we've already got the payment. We've already begun distribution. That's in the record, Judge. Justice. Pardon me. The issue here also is that the intervening districts would like this panel to believe that they preserved an argument on this inadequacy issue at the motion to vacate. It's simply not true. You have to present evidence. You have to present affidavits. You have to present the allegations. They made an argument. Period. The only evidentiary affidavits they presented at the motion to vacate were we didn't get notice. Just like they said in their blue brief, the inadequacy was we didn't get notice. Not until I raised the argument in my response that says this isn't even a 5214.01. And I say, you haven't met any of the standards of 5214.01. Finally, in the reply, they come in and they try and say, well, there's all these numbers that we should have considered and there's all these calculations that we should have considered. I'm certain Mr. Rizzo did not intend to make a misrepresentation, but in the court's record on appeal, beginning at record C639 is his motion to vacate. His motion to vacate does not include a single calculation for a single one of these funds. Period. And let's just be sure we're clear on something. They want you to buy into the fact that if you do the Miller calculation, all you have to do is apply factor A to factor B and you get the magical number. That's not true. You have to have three years of expenses for the individual fund against what remains in the fund and what we say was the money that could have been used. Nowhere in this record did a single one of these districts identify those three years. Period. And this is a 214.01 which starts a new proceeding. They are required in pleading by the Code of Civil Procedure to include that information and support it with evidence. It's not there. Did the taxpayers ever below, did you all ever concede that the wrong numbers were used? No, Justice. We said, we're judges. Thank you. That's another thing I carried away. I apologize. What I said to the court was we believe that we have accurately pleaded either on existing law or a good faith extension thereof of what these numbers should be. Nobody took it beyond that and the trial court did not conduct an evidentiary hearing, nor did any of the districts seek an evidentiary hearing which would have given them the ability to go into that. At the end of the day, the problem is the districts can't get beyond the fact that, number one, there was no jurisdiction for this court, for the trial court, to enter this order. The voluntary payment had been made. They didn't preserve their rights under 214.01 and now they're here trying to scurry about and come up with a, well, is it inadequate because of this or is it inadequate because of this? It was inadequate because of this. This was a deal, purely and simply. And now they want the deal to be a different deal because they don't like the terms of the deal. And the problem in large part is that just keeps happening over and over again. Unless there's any questions, thank you very much for your time. It has been spirited. Thank you. And thank you all here today for a spirited discussion. I'm not a hit man. It's an interesting and complex case. We absolutely appreciate the great argument from both sides. The matter will be taken under advisement. The disposition will be issued. And is there anybody behind us? I think there's one behind you. I just want to commend you on the fact that I've never heard an appellate court justice say any real estate tax case was an interesting case.